# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("**Agreement**") is entered into by and between Edwin Tarley, Jr., Ephraim Wreh, and Cesar Andrade Lozoria ("**Plaintiffs**"), on behalf of themselves and others as described herein, on the one hand, and Environmental Specialties International, Inc. ("**Defendant**") on the other. The Plaintiffs and Defendant may be referred to jointly as the "**Parties**" and singularly as a "**Party**."

## RECITALS

WHEREAS, prior to the execution of this Agreement, there existed certain disputes, claims, and causes of action between Plaintiffs and Defendant; and

WHEREAS, some of the above-referenced disputes, claims, and causes of action, including disputes related to overtime allegedly owed Plaintiffs pursuant to the federal Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et al.* ("**FLSA**"), were asserted in a lawsuit entitled "*Edwin Tarley, Jr., and Ephraim Wreh, Individually and On Behalf of All Others Similarly Situated v. Environmental Specialties International, Inc.,*" filed in the United States District Court for the Eastern District of North Carolina, Eastern Division, C.A. No. 4:22-cv-00116-M-RJ (the "**Lawsuit**"); and

WHEREAS, Defendant denies all the allegations in the Lawsuit, and denies that Defendant is liable in any way to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit or which could have been asserted in the Lawsuit. Nevertheless, without admitting or conceding liability or wrongdoing of any kind, Plaintiffs and Defendant have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Lawsuit; and

WHEREAS, Plaintiffs have thoroughly analyzed and evaluated the merits of the claims against Defendant, the merits of Defendant's positions in response to those claims and Defendant's defenses, the potential damages to be recovered at a trial, and the impact of this Agreement on Plaintiffs; and

WHEREAS, this Agreement is intended to compromise, settle, and finally terminate the Lawsuit against Defendant and the Released Parties (defined below) in the manner set forth below, and to grant unto Defendant and the Released Parties a full, final, and complete release of the claims in the Lawsuit as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a settlement of the Lawsuit on the following terms and conditions:

1. **DEFINITIONS**

    The terms set forth herein shall have the meanings ascribed to them below.

    "**Agreement**" means this Settlement and Release Agreement.

    "**Defendant**" means Environmental Specialties International, Inc.

EXHIBIT A

"**Lawsuit**" means the lawsuit captioned "*Edwin Tarley, Jr., and Ephraim Wreh, Individually and On Behalf of All Others Similarly Situated v. Environmental Specialties International, Inc.,*" filed in the United States District Court for the Eastern District of North Carolina, Eastern Division, C.A. No. 4:22-cv-00116-M-RJ.

"**Plaintiffs**" means Edwin Tarley, Jr., Ephraim Wreh, and Cesar Andrade Lozoria.

"**Parties**" (or **Party** in the singular) means Plaintiffs and Defendant as defined above.

"**Plaintiffs' Counsel**" means Cline Law Firm, PLLC and Jason D. Cline, and Sanford Law Firm, PLLC, Josh Sanford, and Sean Short.

"**Released Parties**" means Environmental Specialties International, Inc. and its officers, directors, members, managers, shareholders, partners, partnerships, employees, attorneys, servants, insurers, their benefit plans and the trustees of those plans, and Environmental Specialties International, Inc.'s past, present, or future subsidiaries, predecessors, successors, parents, partners, partnerships, and any other related companies, entities, or affiliates, its or their benefit plans and the trustees of those plans, as well as its or their past, present, and/or future officers, directors, members, managers, shareholders, partners, partnerships, employees, attorneys, agents, servants, insurers, predecessors and successors, and all other persons, firms, corporations, associations, or legal entities.

Additional defined terms in this Agreement are shown in quotes herein.

2. **SETTLEMENT TERMS**

    2.1 **Settlement Payment to Plaintiffs.**

    (A) In return for the promises and undertakings they make in this Agreement, and other promises made herein, Plaintiffs agree to accept as full and sole consideration (the sufficiency of which they acknowledge), the gross amount of EIGHTEEN THOUSAND NINE HUNDRED AND NO/100 ($18,900.00) (the "**Settlement Payment**"). The Settlement Payment shall be allocated and paid as follows:

    (i) To Tarley, the gross amount of ONE THOUSAND TWO HUNDRED FIFTY AND NO/100 ($1,250.00), less applicable withholdings, payable as W-2 income to Tarley; to Wreh, the gross amount of ONE THOUSAND TWO HUNDRED FIFTY AND NO/100 ($1,250.00), less applicable withholdings, payable as W-2 income to Wreh; and to Lozoria, the gross amount of TWO HUNDRED AND NO/100 ($200.00), less applicable withholdings, payable as W-2 income to Lozoria (collectively "**W-2 Payments**" or individually, "**W-2 Payment**").

    (ii) To Tarley, the amount of ONE THOUSAND TWO HUNDRED FIFTY AND NO/100 ($1,250.00) as liquidated damages payable to Tarley; to Wreh, ONE THOUSAND TWO HUNDRED FIFTY AND NO/100 ($1,250.00) as liquidated damages payable to Wreh; and to Lozoria, TWO HUNDRED AND NO/100 ($200.00) as liquidated damages payable to Lozoria (collectively, "**Liquidated Damages Payments**" or individually, "**Liquidated Damages Payment**"); and

(iii) To Plaintiffs' Counsel, the amount of THIRTEEN THOUSAND FIVE HUNDRED AND NO/100 ($13,500.00) in attorney's fees to Plaintiffs' Counsel ("**Plaintiffs' Attorneys' Fees**").

(B) Following the Parties' execution of this Agreement, Defendant will provide the checks for the Settlement Payment to Plaintiffs' Counsel within 21 days of the later to occur, Defendant's counsel's receipt of all necessary tax documents from Plaintiffs' Counsel or the Court's approval of this Agreement and the dismissal with prejudice of the Lawsuit. The checks provided will consist of seven (7) checks as follows: (i) one check payable to Tarley for the W-2 Payment described above, (ii) one check payable to Wreh for the W-2 Payment described above, (iii) one check payable to Lozoria for the W-2 Payment described above, (iv) one check payable to Tarley for the Liquidated Damages Payment described above; (v) one check payable to Wreh for the Liquidated Damages Payment described above; (vi) one check payable to Lozoria for the Liquidated Damages Payment described above; and (vii) one check payable to Sanford Law Firm, PLLC for the Plaintiffs' Attorneys' Fees described above.

(C) For purposes of any of Defendant's profit sharing, pension plan, 401(k) plan, or any other benefit or retirement program, if applicable, payments under this Agreement are not intended to and will not (1) form the basis for additional contributions, benefits, or monetary entitlements, (2) count as earnings or compensation, or (3) otherwise be considered or applied.

**2.2** **Attorneys' Fees and Costs.**

The Settlement Payment includes a payment to Plaintiffs' Counsel described as Plaintiffs' Attorneys' Fees (on behalf of Plaintiffs). Other than the payment of Plaintiffs' Attorneys' Fees to Plaintiffs' Counsel as described above, each party will be solely responsible for his/its own attorneys' fees and costs. Plaintiffs agree to fully indemnify and hold harmless Defendant and/or the Released Parties, including attorneys' fees with Defendant's and/or the Released Parties' exclusive choice of counsel from and against all loss, cost, damage, or expense incurred by the Defendant or the Released Parties arising out of any breach of this Agreement, including but not limited to any claim for any attorneys' fees or costs whatsoever.

**2.3** **Tax Consequences and Indemnification.**

(A) Each Plaintiff and Plaintiffs' Counsel shall be solely responsible for all local, state, and federal tax obligations, if any, that may be owing or owed by each Plaintiff and Plaintiffs' Counsel as a result of the payments described above. Each Plaintiff expressly promises and agrees to satisfy all such obligations, and/or to cause such obligations to be satisfied and agrees to fully indemnify and hold harmless Defendant and/or the Released Parties, including attorneys' fees with Defendant's and/or the Released Parties' exclusive choice of counsel and costs for any failure to do so.

(B) Each Plaintiff acknowledges and agrees that Defendant and its attorneys have made no representations or warranties to them regarding the tax liabilities or consequences of any amounts received under this Agreement.

4890-4125-4282 v1

(C) Each Plaintiff acknowledges and agrees that he should seek independent advice from professional tax advisors of his choosing regarding the tax consequences, if any, of the settlement payments made under this Agreement.

(D) Plaintiffs and Plaintiffs' Counsel shall provide all necessary tax documents to Defendant to facilitate the payments described in this Agreement, including a W-9 for Plaintiffs' Counsel and each of the Plaintiffs, and W-4 forms for Tarley, Wreh, and Lozoria.

## 3. AGREEMENTS, STIPULATIONS, AND RELEASES

### 3.1 Release of Claims; Dismissal of Lawsuit.

(A) In exchange for the consideration described in Paragraph 2.1 (the sufficiency of which is hereby acknowledged), Plaintiffs release, acquit, and forever discharge Defendant and all the Released Parties, of and from any and all claims, actions, causes of action, demands, rights, damages, liquidated damages, penalties, costs, expenses, attorneys' fees, and all liabilities of whatever kind or character, whether known or unknown, foreseen or unforeseen, arising under any legal theory or doctrine and arising out of, related to, or in any way connected with: (1) any work performed for Defendant or the Released Parties; (2) the Lawsuit; (3) any other action or inaction by Defendant or the Released Parties, including without limitation: (a) any and all claims arising under the Fair Labor Standards Act, as amended, 29 U.S.C. §201, *et seq.*, for overtime pay, minimum wages, liquidated damages, attorney's fees, or injunctive or any other relief; (b) any other claims arising under any other federal, state, or local law, ordinance, regulation, or order; (c) any other contractual claim against Defendant or the Released Parties including but not limited to any aspect of their work for Defendant or the Released Parties; or (d) any and every other claim arising under any source of legal rights and/or obligations which may be validly waived or released, except rights created or preserved expressly in this Agreement.

(B) Plaintiffs agree, for the sole consideration of the payments described in Paragraph 2.1 (the sufficiency of which is hereby acknowledged), to dismiss, with prejudice, the Lawsuit. In exchange for the consideration recited in Paragraph 2.1 of this Agreement (the sufficiency of which is hereby acknowledged), Plaintiffs agree to authorize Plaintiffs' counsel to file, with Defendant, a Joint Motion to Approve Settlement and for Dismissal of All Claims within seven (7) days of the full execution of this Agreement.

(C) Plaintiffs further agree, for the sole consideration of the payments described in Paragraph 2.1 (the sufficiency of which is hereby acknowledged), not to bring any future claims, proceedings, or lawsuits of any kind against Defendant and/or the Released Parties based on events that occurred before the effective date of this Agreement. Plaintiffs agree not to bring any court actions of any kind against Defendant or the Released Parties for any claim waived or released in this Agreement, and Plaintiffs warrant that none of the Plaintiffs have filed any such court or administrative agency actions or proceedings against Defendant or the Released Parties to date. To the extent any federal, state, or local agency takes any action on Plaintiffs' behalf against Defendant or the Released Parties, Plaintiffs expressly waive the right to any recovery from any such action, and agree not to accept any compensation or other relief or remedy obtained on her behalf. Nothing in this Agreement is intended to interfere with Plaintiffs' rights under federal, state, or local law, ordinance, regulation, or order to file or institute a charge of discrimination, participate in any such agency proceeding,

4890-4125-4282 v1

or cooperate in any investigation by any such agency, and any such action by Plaintiffs shall not constitute a breach of the confidentiality provision described in this Agreement.

(D) Plaintiffs expressly acknowledge that with the payments described in Paragraph 2.1, they have been paid for all hours worked and for all amounts due them for all hours worked, including but not limited to overtime payments. Plaintiffs further expressly acknowledge that they reported all work-related accidents, injuries, and illnesses, as applicable.

3.2 **No Assignment.** Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit. Plaintiffs agree that this Agreement is binding on Plaintiffs' heirs, administrators, representation, executors, successors, and assigns, and anyone making a claim through any of the Plaintiffs.

3.3 **No Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of any law or any liability whatsoever to Plaintiffs, individually or collectively, all such liability being expressly denied. Settlement of the Lawsuit and all claims by each Plaintiff and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendant, or the Released Parties, or of the truth of any of the factual allegations filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant or the Released Parties in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that, except as may be required or necessary to obtain the Court's approval of this Agreement, and dismissal of the Lawsuit or the enforcement of this Agreement, this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any proceeding for any reason.

4. **MISCELLANEOUS**

4.1 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement, and this Agreement supersedes any and all prior agreements between the Parties.

4.2 **Representations.** The Parties represent and warrant that Plaintiffs are signing this Agreement voluntarily, have read and reviewed this Agreement with counsel of their own choosing, have had the terms of this Agreement explained to them by their counsel, and understand and agree to each of its provisions. No promises, agreements, or representations have been made to Plaintiffs to induce them to sign this Agreement, except those that are written in this Agreement.

4.3 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied on by the Parties in entering into this Agreement. The Parties have been represented and assisted by counsel through the negotiation and drafting of this Agreement.

4.4 **Severability**. If for any reason any term or provision, or any portion thereof, of this Agreement is held to be invalid or unenforceable to any extent, then (a) such term or provision, or portion thereof, will be interpreted, construed, or reformed to the extent reasonably required to render the same valid, enforceable, and consistent with the original intent underlying such provision; (b) such term or provision will remain in effect to the extent that it is not invalid or unenforceable; and (c) such invalidity or unenforceability will not affect any other term or provision of this Agreement. Notwithstanding the above, paragraphs 2.1 (Settlement Payment to Plaintiffs), 2.2 (Attorneys' Fees and Costs), 2.3 (Tax Consequences and Indemnification), 3.1 (Release of Claims; Dismissal of Lawsuit), and 3.3 (No Admission of Liability) are material terms whose inclusion are essential to this Agreement. If any part of those paragraphs is held to be invalid or unenforceable to any extent, or if any part is edited or reformed in any way, then this Agreement shall be invalidated. The Parties agree to cooperate to address and resolve any such issues as they arise, and to use reasonable, good faith efforts to uphold the settlement reached by the Parties.

4.5 **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Agreement.

4.6 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

4.7 **Costs.** Except as otherwise provided herein, all Parties shall bear their own costs, expenses, and attorneys' fees relating to this Agreement and the Lawsuit.

4.8 **Governing Law.** This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Louisiana, without regard to choice of law principles, except to the extent any law of the United States governs any matter set forth herein, in which case federal law shall govern.

4.9 **Waivers.** No waiver, modification, or amendment of the terms of this Agreement shall be valid or binding unless made in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment. A failure by any Party to insist on the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist on the specific performance of any and all of the provisions of this Agreement.

4.10 **Counterparts.** This Agreement may be executed in counterparts, and execution in counterparts shall have the same force and effect as a single instrument had been signed.

4.11 **Signatures, Transmittals, Electronic Copies, and Facsimiles.** Once a signatory to this Agreement has signed the Agreement, that signature page may be transmitted by email or facsimile to counsel for the other Parties. Any signature made and transmitted by email or facsimile for the purpose of executing this Agreement shall be deemed an original signature

for purposes of this Agreement and shall be binding on the Party whose counsel transmits the signature page by email or facsimile.

THIS DONE AND SIGNED on the day shown below.

_____     _____ day of _____, 2024
Edwin Tarley, Jr.

_____     _____ day of _____, 2024
Ephraim Wreh

_____     _____ day of _____, 2024
Cesar Andrade Lozoria

THIS DONE AND SIGNED on this 19th day of February, 2024.

Environmental Specialties International, Inc.

By: _____
    Mark Dillon

for purposes of this Agreement and shall be binding on the Party whose counsel transmits the signature page by email or facsimile.

THIS DONE AND SIGNED on the day shown below.

_____  
Edwin Tarley, Jr.

_____ day of _____, 2024

_____  
Ephraim Wreh

_____ day of _____, 2024

*[signature]*

_____  
Cesar Andrade Lozoria

09 _____ day of _____01_____, 2024

THIS DONE AND SIGNED on this \_\_\_\_ day of _____, 2024.

Environmental Specialties International, Inc.

By: _____  
    _____

for purposes of this Agreement and shall be binding on the Party whose counsel transmits the signature page by email or facsimile.

THIS DONE AND SIGNED on the day shown below.

_____  
Edwin Tarley, Jr.

_____ day of _____, 2024

*[signature]*  
_____  
Ephraim Wreh

09 day of January, 2024

_____  
Cesar Andrade Lozoria

_____ day of _____, 2024

THIS DONE AND SIGNED on this \_\_\_\_ day of _____, 2024.

Environmental Specialties International, Inc.

By: _____  
_____

for purposes of this Agreement and shall be binding on the Party whose counsel transmits the signature page by email or facsimile.

THIS DONE AND SIGNED on the day shown below.

_____[signature]_____       13 day of 01 , 2024
Edwin Tarley, Jr.

_____       _____ day of _____, 2024
Ephraim Wreh

_____       _____ day of _____, 2024
Cesar Andrade Lozoria

THIS DONE AND SIGNED on this _____ day of _____, 2024.

Environmental Specialties International, Inc.

By: _____